436 So.2d 320 (1983)
DEPARTMENT OF CORRECTIONS, Appellant,
v.
James DIXON and Career Service Commission, Appellees.
No. AQ-368.
District Court of Appeal of Florida, First District.
August 10, 1983.
Rosa H. Carson, Asst. Gen. Counsel, Dept. of Corrections, Tallahassee, for appellant.
William F. Daniel, Tallahassee, for appellee James Dixon, and Jim Smith, Atty. Gen., and John J. Rimes, III, Asst. Atty. Gen., Tallahassee, for appellee Career Service Com'n.
WIGGINTON, Judge.
This cause is before us on appeal from the final order of the Career Service Commission (commission) reinstating with back pay appellee James Dixon to his former position of Correctional Officer I at River Junction Correctional Institution (institution), Chattahoochee, Florida. Appellant Department of Corrections (department) raises two points for our consideration: (1) whether the commission improperly granted Dixon's motion for a directed verdict; and (2) whether the commission made erroneous findings not supported by the record. We answer both issues in the affirmative and reverse.
Dixon was serving as a Correctional Officer I when, in December, 1980, he seriously injured his hip in an automobile accident unrelated to his employment. He returned to work in January, 1981, with his physician's instructions to perform only duties of a restricted nature, and to avoid prolonged standing, walking and lifting. Accordingly, the institution provided special, temporary accommodations for Dixon in the control room where he performed clerking duties.
By letter of May 4, 1981, the institution requested an update from the physician on Dixon's ability to perform his duties as a Correctional Officer I, and an indication as to when Dixon could assume regular duty. The physician recommended that Dixon continue using a crutch for walking for another two months, and indicated that if by that time the fracture was healed, Dixon could begin weight bearing; otherwise, consideration would be given to further hip surgery for a bone graft and insertion of a screw.
In June, 1981, Dixon ceased working at the institution and was admitted to a hospital for surgery. He was placed in a hip cast which was not removed until the following September.
*321 In November, the institution again wrote to Dixon's physician, requesting a medical evaluation as to his ability to perform as a Correctional Officer I. The physician was informed that Dixon's regular duties involved prolonged standing, climbing of stairs, extensive walking, and the possibility of running after and restraining inmates. The institution was again advised, on December 18, 1981, that Dixon could only perform work of a restricted nature which would not require "any contact with prisoners or heavy lifting," and that Dixon would return for x-rays in two months.
Dixon was placed on compulsory leave status on December 23, 1981, pursuant to department rule 22A-8.12(2)(a), Florida Administrative Code, as being unable to perform his assigned duties.[1] Dixon was notified in writing of the duration of the mandatory leave period of thirty days, and that in order for him to return to his position, he must provide medical certification of his ability to perform the duties assigned to a Correctional Officer I employee. Rule 22A-8.12(2)(b), Florida Administrative Code. Dixon was also notified that the institution's employment needs required his return to active employment. Following a January 18, 1982, medical examination, Dixon submitted a medical opinion to Eddie Lawrence, the institution's personnel manager, stating that Dixon could work in a controlled environment where no "unprotected load" would be placed on his left hip.
Dixon was dismissed pursuant to rule 22A-8.12(2)(d)4, on February 12, 1982, for physical inability to perform his assigned duties as a Correctional Officer I. He appealed his dismissal to the Career Service Commission and was given a hearing. The department presented its case first, during which the above-referenced medical correspondence and records were introduced into evidence, and Eddie Lawrence testified. At the close of the department's case, the commission granted Dixon's motion for a directed verdict, including in its final order, based on its findings of fact, that "the Department has failed to prove by a preponderance of the evidence, by the greater weight of the evidence and by competent substantial evidence that it had just cause to remove the Appellant from his position with the Agency." We find that the commission's order is not based on competent and substantial evidence, and reverse.
Rule 22A-8.12(2)(d)4 authorizes the department to dismiss an employee for cause based on the employee's inability to perform assigned duties.[2] During an appeal challenging the dismissal before the commission, the department, as the party asserting the affirmative of an issue, has the burden of proving that the dismissal was "for cause." Balino v. Department of Health and Rehabilitative Services, 348 So.2d 349 (Fla. 1st DCA 1977); Florida Department of Health and Rehabilitative Services v. Career Service Commission, 289 So.2d 412 (Fla. 4th DCA 1974); State Department of Agriculture and Consumer Services v. Strickland, 262 So.2d 893 (Fla. 1st DCA 1972). Although this burden never shifts, the proof presented may establish a prima facie case so that the burden of moving forward with the presentation of the evidence will shift to the employee appealing the dismissal. Florida Department of Health and Rehabilitative Services v. Career Service Commission; 1 Fla.Jur.2d Administrative Law § 81.
We hold that the department presented evidence sufficient to establish prima facie cause for dismissal. The evidence *322 demonstrated that Dixon had been unable to perform the duties of a Correctional Officer I, and that he had failed to obtain medical certification to indicate the contrary. There is no basis in the rules for the commission's implication in its order that the department was under an obligation to find "make-work" for Dixon; and there is no basis in the record for the commission's finding that other correctional officers had not been dismissed despite allegedly debilitating disabilities. In regard to the latter, the record is clear that all but one of those employees (who was ultimately dismissed) had received medical certification of their ability to perform their assigned duties as correctional officers.
Therefore, in answer to the department's questions raised on appeal, we hold: (1) the commission improperly granted Dixon's motion for directed verdict; and (2) the commission made erroneous findings not supported by the record. The commission's order reinstating Dixon with back pay is REVERSED, and the cause is REMANDED for further proceedings.
ERVIN, C.J., and THOMPSON, J., concur.
NOTES
[1] (2) Compulsory disability leave

(a) An agency head who believes that an employee is unable to perform assigned duties due to illness or injury may require the employee to submit to a medical examination by a physician named and paid by the agency. If the medical examination confirms that the employee is unable to perform assigned duties, the agency head shall place the employee on compulsory disability leave.
[2] (d) If the employee is unable to return to work at the end of the mandatory leave period, based on a current medical certification, the agency head may:

* * * * * *
4. Dismiss the employee for cause based on inability to perform assigned duties.